<u>NOT FOR PUBLICATION</u>                                    (Document No. 50)

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

_____
                                                    :
WYNDHAM HOTELS AND                   :
RESORTS, LLC                                    :
                                                    :        Civil No. 10-2583 (RBK/AMD)
                    Plaintiff,              :
                                                    :
        v.                                         :        **OPINION**
                                                    :
                                                    :
NORTHSTAR MT. OLIVE, LLC, and    :
MANISH PATEL, and ANIL PATEL,    :
                                                    :
                                                    :
                    Defendants.         :
_____ :

**KUGLER**, United States District Judge:

        This matter arises out of a franchise agreement between franchisor Plaintiff Wyndham

Hotels and Resorts ("Plaintiff") and franchisee Northstar Mt. Olive, LLC ("Northstar") to

operate a hotel in Mount Olive, New Jersey.  Plaintiff claims that Northstar breached its

obligations under the franchise agreement and, in so doing, violated federal trademark laws.  It

asserts various causes of action against Northstar as well as its owners Manish Patel and Anil

Patel (collectively, "Defendants").  For their part, Defendants have filed counterclaims against

Plaintiff.  Currently before the Court is Plaintiff's motion for summary judgment on four of its

eight claims for relief and on all of Defendants' counterclaims (Doc. No. 50).  For the reasons

stated herein, the Court will grant in part and deny in part Plaintiff's motion.  It will grant

summary judgment of liability on Plaintiff's trademark, breach of contract, and declaratory

judgment claims, but deny the motion with respect to the request for damages.  It will also grant

Plaintiff summary judgment on Defendants' counterclaims of unconscionability and negligent misrepresentation.  It will deny the motion with respect to Defendants' remaining Counterclaims.

## I.      FACTUAL AND PROCEDURAL BACKGROUND

On January 18, 2008, Plaintiff entered into a Franchise Agreement ("Agreement") with Northstar, the basic terms of which included Northstar's agreement to pay various franchise fees to Plaintiff in exchange for the rights to operate a hotel under the Wyndham trademark for a ten-year term.  In addition, the Agreement included the following provisions.

First, it required Northstar to make various periodic payments to Plaintiff, including royalties, marketing fees, reservation system fees, national sales fees, regional marketing fees, and others (collectively, "Recurring Fees").  Plaintiffs' SUMF ¶ 14. [1]

Next, Plaintiff could terminate the Agreement if Northstar failed to pay any past-due Recurring Fees within 10 days of receiving notice of a default.  Agreement ¶¶ 17B(7).  In the event of a termination, Northstar agreed to pay Plaintiff liquidated damages in accordance with a specially negotiated formula.  Agreement ¶¶ 18E, 32.3.

The Agreement included an acknowledgement (in all-capital letters) by Northstar that: 1) there were no express or implied covenants or warranties except those provided in the contract itself; 2) it did not rely on any promises, representations or agreements about the franchisor or the franchise that were not expressly contained in the Agreement; 3) Plaintiff had not in fact made any oral or written promises, representations or agreements except for those expressly contained in the agreement.  Agreement ¶ 30.

---

[1] Because Plaintiff is the moving party for the present motion for summary judgment, any reference to its own Statement of Undisputed Material Facts ("SUMF") will be limited to those assertions of fact which have been specifically admitted by Defendants.  *See* Fed. R. Civ. P. 56(c)(1)(A) (stating that in considering a summary judgment motion, the Court may rely upon a party's admissions).

The Agreement also included several negotiated provisions.  Pl.'s SUMF ¶ 8; Agreement ¶¶ 32-32.6.  Among these was a so-called a "Franchisor Room Guaranty."  *Id.* ¶ 32.6.  Under this provision, if Northstar converted one of the hotel meeting rooms into a training facility with computers and amenities necessary for corporate meetings, maintained that room in such condition, and if it met with Plaintiff's approval, then Plaintiff agreed to "book and pay Franchisee a minimum of . . . $218,000[] in both room nights and corporate meetings or other events during the first . . . and second . . . years of Hotel operation."  *Id.*

Finally, accompanying the Agreement was a document titled "Guaranty" in which Defendants Anil and Manish Patel agreed that all representations in the Agreement were true, that they would be bound, jointly and severally, to the terms and conditions of the Agreement, and would "absolutely, unconditionally and irrevocably guaranty to Franchisor and its successors and assigns that all of Franchisee's obligations under the Agreement will be punctually paid and performed."  Compl., Exh. B.  It further clarified that upon a default by Northstar, both individuals would "immediately make each payment and perform each obligation required of Franchisee under the Agreement."  *Id.*

Certain events that transpired after the parties signed the Agreement are not in dispute. First, Plaintiff did not fulfill its conditional obligations under the "Franchisor Room Guaranty" clause; that is, it did not book reservations with Northstar totaling $218,000 in either the first or the second year of the Agreement.  *See* A. Patel Decl. ¶ 18; Pl.'s Reply Br. 7.  Further, Defendant did not pay certain Recurring Fees owing under the Agreement.  Def.'s Opp. Br. 5.

On February 4, 2009, WHR sent Northstar a letter saying it was in breach of the Agreement for failure to pay Recurring Fees and comply with "brand standard requirements."

The letter stated that Defendants had 10 days to cure the default.  Valerie Capers Workman Decl., Exh. C.  It appears that Defendants did not respond to this letter.

Almost one year later, on January 11, 2010, WHR sent Northstar a letter giving notice of termination of the Agreement, effective March 12, 2010.  *Id.*, Exh. D.  The letter also instructed Northstar to remove all WHR-related identifiers within fourteen days of the termination date.

In May 2010, Plaintiff filed the instant suit (Doc. No. 1).  The Complaint includes eight counts, four of which are the subject of the instant summary judgment motion: violations of the Lanham Act, 15 U.S.C. § 1051 *et seq.* (First Count); breach of contract (Third and Fifth Counts); and a declaration that Manish and Anil Patel are personally liable for Northstar's obligations under the Franchise Agreement (Seventh Count).

In their Answer to Plaintiff's Complaint, Defendants asserted numerous counterclaims[2]: a declaratory judgment action that the franchise agreement is unconscionable and therefore void (Count I); negligent misrepresentation and omission in the formation of the agreement (Count III); breach of contract (Count IV); breach of the covenant of good faith and fair dealing (Count V); wrongful termination of the Agreement in violation of the New Jersey Franchise Practices Act ("NJFPA") (Count VI); and wrongful non-renewal of the Agreement in violation of the NJFPA (Count VII).  Plaintiff seeks summary judgment in its favor on all of these counterclaims.

## II.   LEGAL STANDARD

Summary judgment is appropriate where the Court is satisfied that "there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986).  A genuine dispute of material fact exists only if the evidence is such that a reasonable jury could find for the non-

---

[2] Defendants later withdrew their claims for fraud and tortious interference which were included as Counts II and VIII in their Counterclaim, respectively.  Thus, they do not figure into the Court's analysis.

moving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  When the Court weighs the evidence presented by the parties, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  *Id.* at 255.

The burden of establishing the nonexistence of a "genuine issue" is on the party moving for summary judgment.  *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1080 (3d Cir. 1996).  The moving party may satisfy its burden either by "produc[ing] evidence showing the absence of a genuine issue of material fact" or by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case."  *Celotex*, 477 U.S. at 325.

If party seeking summary judgment makes this showing, it is left to the nonmoving party to "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Rather, to survive summary judgment, the nonmoving party must "make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex*, 477 U.S. at 322.  Furthermore, "[w]hen opposing summary judgment, the nonmovant may not rest upon mere allegations, but rather must 'identify those facts of record which would contradict the facts identified by the movant.'"  *Corliss v. Varner*, 247 Fed. Appx. 353, 354 (3d Cir. Sept. 17, 2007) (quoting *Port Auth. of N.Y. and N.J. v. Affiliated FM Ins. Co.*, 311 F.3d 226, 233 (3d Cir. 2002)).

In deciding the merits of a party's motion for summary judgment, the Court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial.  *Anderson*, 477 U.S. at 249.  Credibility determinations are the province

of the factfinder, not the district court.  *BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992).

## III.   DISCUSSION AND ANALYSIS

### A.   Plaintiff's Lanham Act Claim (First Count)

The basis of Plaintiff's Lanham Act claim is that once Plaintiff terminated the Agreement because of Defendants' failure to pay certain Recurring fees, Defendants lost the right to use Plaintiff's trademarks.  Thus, the continued use of those trademarks amounts to a violation of the Lanham Act, irrespective of any related breach of contract claims Defendants might assert against Plaintiff.  Defendants do not appear to contest their liability under the Lanham Act, but instead claim that summary judgment should be denied with respect to damages.  Defs.' Opp. Br. 12-13.

#### i.  Section 32 Lanham Act Claim

The elements of a claim for relief under Section 32 of the Act, 15 U.S.C. § 1114, are well established.  A plaintiff must show that

> (1) the marks are valid and legally protectable; (2) the marks are owned by the plaintiff; and (3) the defendant's use of the marks to identify goods or services is likely to create confusion concerning the origin of the good or services.

*Opticians Ass'n of Am. v. Independent Opticians of Am.*, 920 F.2d 187, 192 (3d Cir. 1990).  As a general matter, confusion arises when the infringer uses the exact same trademark as the one owned by a plaintiff.  *S & R Corp. v. Jiffy Lube Intern., Inc.*, 968 F.2d 371, 375 (3d Cir. 1992).  In addition, the plaintiff must show that the defendant did not have consent to use these marks.  15 U.S.C. § 1114(1).  If the use of trademarks was authorized pursuant to a contract, and the owner of the marks terminated the contract, then continued usage of the marks will be unauthorized for Lanham Act purposes, irrespective of any claims by a defendant that the

6

trademark owner is itself liable for breach of contract.  *S & R Corp.*, 968 F.2d at 376 ("Under basic contract principles, when one party to a contract feels that the other contracting party has breached its agreement, the non-breaching party may either stop performance and assume the contract is avoided, or continue its performance and sue for damages.  Under no circumstances may the non-breaching party stop performance *and* continue to take advantage of the contract's benefits.").

In this case, Plaintiff satisfies the first two elements of this claim based on the undisputed declaration of Valerie Capers Workman, Plaintiff's Vice President of Compliance and Government Relations.  She avers that Plaintiff owns "federally-registered trade names, service marks, logos, and derivations thereof," which it allows its franchisees to use.  Workman Decl. ¶¶ 5-6.  It is likewise undisputed that Defendants used these very same marks at their hotel. Further, under the terms of the Agreement, Plaintiff reserved the right to terminate the franchise if Northstar failed to pay recurring fees due under the Agreement within 10 days of receiving notice of default.  Agreement ¶ 17(B)(7).  Plaintiff sent such notice of default to Defendant on February 4, 2009.  Having received no payments from Defendants which would cure the default, Plaintiff sent notice of formal termination on January 11, 2010, and specified that Defendants would have to cease use of its trademarks by March 26, 2010.  Workman Decl, Exh. D.  Thus, after that date, any use of the trademarks by Defendants would be unauthorized.

Plaintiff presents undisputed evidence that on March 29, 2010, Wyndham representatives made a site visit to Defendants' hotel and found that the hotel still bore Plaintiff's trademarks. *Id.* Exh. E.  Thus, the Court finds no genuine dispute as to any material fact concerning Defendants' liability under section 34 of the Lanham Act.

Defendants argue forcefully that Plaintiff did not fulfill its obligations under the Agreement prior to the date of termination.  They also claim that extenuating circumstances prevented them from removing Plaintiff's marks by the March 29 date.  Defs.' Opp. Br. 12-13. These circumstances do not affect their liability under the Act.  *S&R Corp.*, 968 F.2d at 377 ("Where the franchise agreement gives the franchisor the power to unilaterally terminate the agreement under certain conditions, and those conditions exist, pre-termination complaints are not relevant to infringement under the Lanham Act.").  Instead, they are relevant to the question of damages.  *Id.*  Thus, the Court will grant Plaintiff's motion for summary judgment under Section 32 of the Lanham Act as to liability, but will decline to enter an award of damages.

    *ii. Section 43(a) Lanham Act Claim*

Section 43 of the Lanham Act creates liability for certain acts of unfair competition.  *See* 15 U.S.C. § 1125.  The elements of a claim under Section 43(a) are "(1) that the trademark or trade name is distinctive and therefore, protectable; and (2) that the second comer's actions cause a likelihood of confusion among the relevant consumers."  *Birthright v. Birthright Inc.*, 827 F. Supp. 1114, 1136 (D.N.J. 1993).  Courts have recognized that liability under Section 43 arises necessarily upon a finding of liability under Section 32 of the Lanham Act.  *Id.*; *General Motors Corp. v. New A.C. Chevrolet, Inc.*, 92 F. Supp. 2d 733, 742-43 (D.N.J. 2000); *see also Travelodge Hotels, Inc. v. Elkins Motel Assocs., Inc.*, No. 03-799, 2005 WL 2656676 at *8 (recognizing prior precedent acknowledging that the "law governing trademark infringement under section 43(a) of the Lanham Act . . . generally follows the law governing infringement of registered trademarks, which are protected under section 32").  The Court agrees that the evidence presented by Plaintiff to establish a Section 32 claim is sufficient to establish a Section

43(a) claim as well.  Thus, the Court will grant Plaintiff's motion for summary judgment as to liability, but again will decline to enter an award of damages.

     *iii. Section 43(c) Lanham Act Claim*

     Plaintiffs also ask the Court to grant a permanent injunction enjoining Defendants from "marketing, promoting, or selling guest lodging services at the [Mt. Olive] Facility through and with the Wyndham Marks."  Section 43(c) of the Lanham Act specifies that a district court may enter a permanent injunction against another person's commercial use in commerce of a famous mark or trade name.  15 U.S.C. § 1125(c).  The statute offers a non-exclusive list of factors that the Court may consider in determining whether a plaintiff's marks are "distinctive and famous."  *Id.* § 1125(c)(A)-(H).  Further, before it grants a permanent injunction, the Court must consider whether "(1) the moving party has shown actual success on the merits; (2) the moving party will be irreparably injured by the denial of injunctive relief; (3) the granting of the permanent injunction will result in even greater harm to the defendant; and (4) the injunction would be in the public interest."  *Ramada Worldwide Inc. v. Courtney Hotels USA, LLC*, No. 11-896, 2012 WL 924385 at *6 (D.N.J. Mar. 19, 2012) (citing *Gucci America, Inc. v. Daffy's, Inc.*, 354 F.3d 228, 336-37 (3d Cir. 2003)).

     In this case, the Court finds that the Wyndham mark is "famous" within the meaning of the Lanham Act, given that it has been federally-registered, is ubiquitous across the nation, and bears an inherent distinctiveness.  *See* 15 U.S.C. § 1125(c)(A), (D), (H).  With regard to the considerations involved in granting a permanent injunction, the Court finds that they are to be resolved in Plaintiff's favor.  First, Plaintiff has established actual success on the merits of its Lanham Act claims.  Second, courts in this circuit agree that trademark infringement amounts to irreparable injury as a matter of law.  *See Platypus Wear, Inc.*, No. 08-2662, 2009 WL 2147843

at *8 (D.N.J. July 15, 2009) (citing *S & R Corp.*, 968 F.2d at 378)).  Third, it does not appear that

Defendants seek to use Plaintiff's trademarks at this time to operate their hotel; thus, the Court

does not find that granting a permanent injunction will cause Defendants greater harm.  Finally,

the grant of a permanent injunction serves the public interest in a trademark case because it

advances the public's right not to be deceived or confused.  *See Opticians Ass'n*, 920 F.2d at

197.  Thus, the Court will grant Plaintiff's request for permanent injunctive relief against

Defendants.

**B.     Parties' Breach of Contract Claims (Third and Fifth Count of Complaint, Count IV of Counterclaim)**

Plaintiff asserts that it is entitled to summary judgment on its breach of contract claims

against Northstar.  Specifically, both parties agree that Northstar was required to pay Recurring

fees to Plaintiff under the Agreement, and both parties acknowledge that Northstar stopped

making those payments while the Agreement was still in effect.  The Agreement stated that if

Northstar failed to make these payments, then, provided that WHR gave proper notice of default

and an opportunity to cure, WHR could unilaterally terminate the contract.  Agreement ¶¶ 17B,

17C.  It appears that WHR complied with these procedures.

For its part, Northstar argues that it stopped making the franchise payments because,

among other reasons, Plaintiff had already breached certain of its own obligations under the

Agreement.  Defs.' Opp. Br. 4-5.  Thus, Defendants continue, such alleged breach excused

Northstar from further performance.  In particular, Northstar claims that it fulfilled its obligations

under the Franchisor Room Guaranty because according to hotel industry custom, to "convert"

and "maintain" a room for a certain use (as called for under the Agreement) simply means

preparing the room for that use on an as-needed basis, and not, as Plaintiff appears to argue,

10

"permanently remaking (in some unspecified way) a versatile multi-meeting, divisible room into one monolithic space that would sit vacant in between specific training sessions." Defs.' Opp. Br. 9; *see also* A. Patel Deposition 99. Defendants aver that, so interpreting their obligations, they did convert and maintain a training facility in the hotel for Plaintiff's use. A. Patel Deposition 99-103. Further, Defendant Anil Patel avers that three Wyndham executives were present during training sessions at the hotel and voiced their approval of the facility. Cert. of A. Patel ¶ 17. Thus, Defendants conclude, Plaintiff breached its obligations under the Agreement when it failed to make $218,000 in room reservations in either the first or second year of the Agreement.[3] *See* Agreement ¶ 32.6.

In response, Plaintiff argues that, notwithstanding any of its own failures to abide by the Agreement, once Northstar stopped paying recurring fees but continued to operate as a Wyndham hotel, Plaintiff had the right to repudiate the contract and obtain a judgment as a matter of law that Northstar is liable for breach.[4]

Plaintiff supports this position principally through reliance on *S & R Corp. v. Jiffy Lube Int'l, Inc.*, 968 F.2d 371 (3d Cir.1992). Pl.'s Mot. for S.J. 8. In that case, plaintiff and defendant were franchisor and franchisee, respectively. They entered into an agreement which, among other things, gave S & R the right to operate three Jiffy Lube enterprises in exchange for S & R's making periodic royalty payments to Jiffy Lube. *Id.* at 373. S & R stopped paying these royalty payments while the agreement was still in effect, but claimed that this action was justified

---

[3] Defendants also advance an argument that under the terms of paragraph 32.6, Plaintiff was actually bound to provide $218,000 for "*both* room nights *and* corporate meetings." Agreement ¶ 32.6 (emphasis added). Defendants contend that the $218,000 figure thus corresponds first to room nights, and then to corporate meetings, meaning that Plaintiff's total obligations would be $436,000. The Court expresses no opinion as to the merits of this contract interpretation, but mentions the point only to illustrate that Defendants have raised disputed issues of material fact concerning Plaintiff's fulfillment of its obligations under the Agreement that precludes a finding of summary judgment on its Counterclaim.

[4] Of course, for purposes of this summary judgment motion, the Court will view the facts in the light most favorable to the non-moving party, meaning that it will assume that Plaintiff did breach the room guaranty provisions of the Agreement before the Agreement was terminated.

because it was a response to Jiffy Lube's prior breach of certain of its contractual obligations under the agreement.  After some initial wrangling between the parties, Jiffy Lube moved for a preliminary injunction.  It claimed S&R had violated the Lanham Act by continuing to use Jiffy Lube's trademark after the agreement authorizing such use had been terminated; it also asserted that it had properly terminated the agreement due to S&R's continued failure to make the required royalty payments.  The district court denied the preliminary injunction because Jiffy Lube had failed to demonstrate a likelihood of success on the merits of the trademark infringement claim given the dispute regarding termination of the agreement.  The court determined that S&R's claims of breach on the part of Jiffy Lube created questions of fact that precluded an award of injunctive relief.  *Id.* at 374.

The Third Circuit reversed and directed the district court to grant the injunction.  The court held that

> a franchisor's right to terminate a franchisee exists independently of any claims the franchisee might have against the franchisor. The franchisor has the power to terminate the relationship where the terms of the franchise agreement are violated.  Once a franchise is terminated, the franchisor has the right to enjoin unauthorized use of its trademark under the Lanham Act.

*Id.* at 375.  As a matter of "basic contract principles," the court noted that when one party to a contract feels that the other has breached the agreement, the aggrieved party may either "stop performance and assume the contract is avoided, or continue its performance and sue for damages."  *Id.* at 376.  The court emphasized, however, that "[u]nder no circumstances may the non-breaching party stop performance *and* continue to take advantage of the contract's benefits."  *Id.*  Relying on previous decisions outside of the Third Circuit, the court opined that if S&R had wanted to preserve its right to recover for Jiffy Lube's alleged breaches while continuing to reap benefits under the contract (most notably, the privilege of using Jiffy Lube's trademark), S&R

12

should have continued to fulfill its own affirmative obligations under the franchise agreement (most notably, its duty to make periodic royalty payments) while it prepared to file suit against Jiffy Lube. *Id.* (citing *Burger King Corp. v. Austin*, 805 F. Supp. 1007 (S.D. Fla. 1992)). Thus, the court concluded, "where the franchise agreement gives the franchisor the power to unilaterally terminate the agreement under certain conditions, and those conditions exist, pre-termination complaints are not relevant to infringement under the Lanham Act. Rather, pre-termination disputes affect the issue of damages." *Id.* at 377. Accordingly, Jiffy Lube had demonstrated a likelihood of success on the merits of its trademark infringement claim.

While this holding appears to support Plaintiff's position, it should be noted that at least one court has recognized the limited applicability of *S & R Corp.* in the context of a motion for summary judgment, a franchise agreement, and claims of mutual breach by franchisor and franchisee. In *Travelodge Hotels, Inc. v. Honeysuckle Enterprises, Inc.*, 357 F. Supp. 2d 788 (D.N.J. 2005), the parties entered into a franchise agreement to allow the defendant to operate a hotel using the plaintiff's trademarks. At some point, the defendant ceased making certain payments required under the agreement. When it was notified of this apparent default, the defendant declared that it already considered the contract terminated (without, it seems, actually notifying the plaintiff of this fact) owing to the franchisor plaintiff's alleged breaches of its own obligations under the agreement. *Id.* at 793. Thereafter, the plaintiff sent a notice of termination of the agreement and sought summary judgment on the question of liability: specifically, the plaintiff asked the court to find that the defendant owed liquidated damages and certain unpaid fees that had accrued before the date of contract termination. *Id.* at 794.

It was undisputed that the defendant had stopped paying fees under the agreement while still operating as one of plaintiff's hotels. Nevertheless, the defendants argued that their

performance under the franchise agreement "was excused by [the plaintiff's] material breach of the contract." *Id.* at 796.  The court held that the defendant's "claims for breach of contract . . . prevent [it] from concluding that [plaintiff] is entitled to summary judgment." *Id.* at 797 (citing *Magnet Resources, Inc. v. Summit MRI, Inc.*, 318 N.J. Super. 275 (1998) ("It is black letter contract law that a material breach by either party to a bilateral contract excuses the other party from rendering any further contractual performance . . . .  Whether conduct constitutes a breach of contract and, if it does, whether the breach is material are ordinarily jury questions.")).  Thus, viewing the record in the light most favorable the non-moving party, the court determined that there were disputed issues of material fact as to whether plaintiff had failed to live up to its obligations under the agreement prior to the defendant's decision to stop paying certain franchise fees.  Accordingly, the court found that, unlike in a Lanham Act claim, the question of a plaintiff's own performance under the franchise agreement was relevant to determining whether to grant that plaintiff summary judgment on its breach of contract claim.

In reaching this decision, the court grappled with the force of *S & R Corp.*  It found the case not controlling because the Third Circuit's discussion in that case focused on the appropriateness of injunctive relief on a trademark claim; thus it was from this procedural "vantage point [that the court] discussed the likelihood that the franchisor's termination of the franchise agreement was proper." *Id.* at 798.  In addition, the court noted that the *S & R Corp.* court was resolving a different legal issue (that is, a Lanham Act claim) than the one before it, which sought recovery for breach of contract.

Other courts that have encountered this issue, however, have reached the opposite conclusion. *See, e.g.*, *Knights Franchise System, Inc. v. P.C.P.S. Corp.*, No. 06-5243, 2009 WL 3526229 (D.N.J. Oct. 21, 2009).  In *Knights Franchise*, the parties were again involved in a

franchise agreement to operate a hotel.  The defendant franchisee ceased making payment of fees

due under the agreement for over six years before the franchisor finally sent notice of

termination.  The defendant justified its nonpayment of fees by claiming that in the early stages

of franchise relationship the plaintiff franchisor had breached the agreement by failing to provide

certain infrastructure and other resources allegedly called for under the contract.  *Id.* at *2.  The

court granted plaintiff's motion for summary judgment, holding that defendant was liable for

breach of the agreement.

The court related the "axiomatic" principle that "when a party believes another contacting

[sic] party has breached its contractual obligations, the injured party may either terminate the

contract or continue to perform and sue for damages, but if the injured party continues to

perform under the contract, it may only sue for damages caused by the breach, but it may no

longer rely on that breach to excuse its own subsequent failure to perform contractual

obligations."  *Id.* at *3 (citing *Frank Stamato & Co. v. Borough of Lodi*, 71 A.2d 336, 339 (N.J.

1950)).  It also noted that some district courts had interpreted this principle in the context of a

franchise agreement to mean that a franchisee was barred from raising as an affirmative defense

that a franchisor had breached the franchise agreement before the franchisee stopped performing

under the contract.  *Id.* (citing *McDonald's Corp. v. Robert A. Makin, Inc.*, 653 F. Supp. 401, 403

(W.D.N.Y. 1986); *Travelodge Hotels, Inc. v. Elkins Motel Assocs., Inc.*, No. 03-799, 2005 WL

2656676, at *7 (D.N.J. Oct. 18, 2005)).  Thus, even assuming that the plaintiff had breached

certain aspects of the franchise agreement, the fact that defendants had continued to receive the

principal benefits under the contract – i.e., the privilege to operate with the franchisor's

trademarks – precluded them from arguing that the plaintiff's alleged breach excused the

nonpayment of various franchise fees.  As the court concluded, "'the alleged wrongs of plaintiff

do not constitute affirmative defenses to defendants' non-payment of franchise fees.'" *Id.* (citing *McDonald's Corp.*, 653 F. Supp. at 403).

Finally, in *Red Roof Franchising, LLC v. AA Hospitality Northshore, LLC*, -- F.Supp.2d -- -, No. 10-4120, 2012 WL 2522964 (D.N.J. June 28, 2012), the parties entered into a franchise agreement to operate a hotel.  In this case, the franchisee stopped operating the franchise as a Red Roof Inn, thus prompting the plaintiff franchisor to terminate the agreement due to abandonment.  *Id.* at *1.  The plaintiff sued, seeking summary judgment as to defendant's breach of the agreement and its obligation to pay franchise fees owing under the agreement.  The defendants opposed summary judgment on the basis of plaintiff's own alleged breach of its franchise obligations.

The court described the relevant inquiry as whether the plaintiff "materially breached the franchise agreement so that the defendants were justified in not paying the required fees, *and* if defendants *also* ceased to take advantage of the benefits under the franchise agreement." *Id.* at *6 (emphasis added).  Even assuming that the plaintiff had materially breached the contract, the court found it dispositive that the defendants continued to take advantage of the contract's benefits (the primary of which was to operate a hotel using plaintiff's trademarks) while ceasing its own performance.  Thus, the court found that they were obligated to pay any fees due under the franchise agreement that accrued prior to the date that defendants ceased operating as a Red Roof Inn.  *Id.*  The court's test appeared to lay out two necessary conditions that must obtain in order to preclude summary judgment on a franchisor's breach of contract claim: first, there must be a material breach by the franchisor; second, the franchisee must immediately stop receiving benefits from the agreement.  If either of those conditions is unfulfilled, then the franchisor may be awarded summary judgment, even if the franchisor had itself earlier breached the contract.

16

Recognizing the apparent inconsistency between *Travelodge* on the one hand and *Knights Franchise* and *Red Roof* on the other, the Court concludes that the latter pair of cases make the compelling case.  It appears that the court in *Travelodge* did not lend sufficient weight to the fact that the franchisee continued to operate under franchisor's trademarks even after it stopped making franchise fee payments.  *See Travelodge*, 357 F. Supp. 2d at 698.   Instead, it considered whether the defendant franchisee was actually receiving benefits under the contract after it stopped paying franchise fees to be a disputed question of fact for a jury to decide.  *Id.* n. 6.  In contrast, this Court finds that continuing to operate a hotel using a franchisor's trademarks is properly considered a receipt of benefits.

Applying the principles of *Knights Franchise* and *Red Roof* to the instant case leads the Court to the inexorable conclusion that Plaintiff is entitled to summary judgment on the question of Defendant's breach.  It is undisputed that Defendants did not pay Recurring fees to Plaintiff, even as they continued to operate their hotel as a Wyndham franchise.  Thus, they are barred from asserting Plaintiff's alleged breach of the Agreement as an affirmative defense to liability.  *See Knights Franchise*, 2009 WL 3526229 at *3; *Red Roof*, 2012 WL 2522964 at *6.[5]

At the same time, it is just clear as clear that Defendants may assert a breach of contract claim against Plaintiff.  *See id.*  As Defendants have supported these claims with evidence (as described above) creating disputed issues of material fact concerning Plaintiff's fulfillment of certain franchise obligations (most notably the Franchisor Room Guaranty provision in ¶ 32.6 of the Agreement), the Court will deny Plaintiff's motion to enter summary judgment in its favor on Defendant's breach of contract counterclaim.

---

[5] As *S & R Corp.* makes clear, however, pre-termination disputes may affect the issue of damages to which a party may be entitled.  *S & R Corp.*, 968 F.2d at 377.  Thus, the Court will decline to award Plaintiff damages on summary judgment.

**C.      Plaintiff's Declaratory Judgment as to personal liability of Anil and Manish Patel (Seventh Count)**

The Parties' submissions do not appear to contest the personal liability of Defendants Anil and Manish Patel with respect to the obligations of Northstar, LLC under the Agreement. The Court, having reviewed the Guaranty document signed by both Anil and Manish Patel, has no reason to doubt its authenticity.  Thus, it will grant Plaintiff's motion for summary judgment seeking a declaration that Anil and Manish Patel are personally liable for Northstar's obligations under the Agreement.

**D.      Defendants' Breach of the Covenant of Good Faith and Fair Dealing and New Jersey Franchise Practices Act Claims (Counts IV, VI & VII)**

Plaintiff's only arguments in support of granting summary judgment on Counts IV, VI, and VII of Defendants' Counterclaim were dependent on the Court's first finding that Plaintiff had not breached any of its obligations under the Agreement.  Because the Court finds that Defendants have offered competent evidence creating a disputed issue of material fact as to whether Plaintiff did breach the Agreement, the Court will deny the motion for summary judgment against Defendants on these Counterclaims.

**E.      Defendants' Unconscionability Claim (Count I)**

Defendants' Complaint alleged that Plaintiff "exploited its overwhelming bargaining power to require all franchisees, including the Defendants, to sign overwhelmingly one-sided contracts of adhesion without any potential for meaningful negotiation of their terms."  Def.'s Counterclaim ¶ 38.  Defendants' opposition brief, however, offers no response to Plaintiff's persuasive arguments in favor of granting summary judgment on this counterclaim.  The Court agrees and will grant Plaintiff's motion for summary judgment on Count I.

Under New Jersey law, courts assess unconscionability of a contract by reference to two factors: "(1) unfairness in the formation of the contract, and (2) excessively disproportionate terms." *Sitogum Holdings, Inc. v. Ropes*, 800 A.2d 915, 921 (N.J. Super. Ct. Ch. Div. 2002) (describing the first factor as relating to "procedural" unconscionability and the second to "substantive" unconscionability). Procedural unconscionability may relate to factors such as age, literacy, lack of sophistication, hidden contract terms, bargaining tactics, and the particular setting during the contract formation process. *Id.* Substantive unconscionability, on the other hand, arises when "the exchange of obligations [is] so one-sided as to shock the court's conscience." *Id.*

In this case, Defendants have offered no evidence that would allow a reasonable trier of fact to find that either the process used to create the Agreement with Plaintiff or the terms of the Agreement itself is unconscionable. First, the Court does not understand how Defendants can claim that there was procedural unconscionability such that there was "no potential for meaningful negotiation" of contract terms. *See* Counterclaim ¶ 38. The Agreement contains six paragraphs of terms called "Special Stipulations" which are exactly the sort of negotiated terms that preclude a finding of procedural unconscionability. Agreement ¶¶ 32-32.6. One of these terms is the Franchisor Room Guaranty, which is clearly a concession in Defendants' favor. *Id.* ¶ 32.6. Likewise, there is a cap on Plaintiff's ability to recover liquidated damages. *Id.* ¶ 32.3. Still another provides "additional termination rights" to Defendants. *Id.* ¶ 32.1. Thus, the Court finds no procedural unconscionability.

In addition, there is no indication that any of the substantive terms of the contract are unconscionable. Defendants provide no argument to the contrary; indeed, Defendant Anil Patel, when asked in his deposition, could not identify a single provision that he considered to be

unconscionable.  A. Patel Deposition 110.  Thus, the Court will grant summary judgment in Plaintiff's favor on Defendant's unconscionability counterclaim.

### F.  Defendants' Negligent Misrepresentation Claim (Count III)

Finally, Plaintiff seeks summary judgment on Defendants' claim for negligent misrepresentation.  In their Counterclaim, Defendants assert that Plaintiff failed to represent important facts "concerning required investments in the Hotel, and [Plaintiff's] inability to generate sufficient business to meet its guarantees under the Franchise Agreement." Counterclaim ¶ 51.  In addition, Defendants claim that "at the time Wyndham drafted and included certain incorrect terms in the franchise agreement . . ., it knew or should have known that the language it drafted and included did not reflect the agreements that had actually been agreed upon between the parties."  *Id.* ¶ 52.  Plaintiff responds that, among other things, Defendants explicitly acknowledged that they "DID NOT RELY ON ANY PROMISES, REPRESENTATION OR AGREEMENTS ABOUT [PLAINTIFF] OR THE FRANCHISE NOT EXPRESSLY CONTAINED IN THIS AGREEMENT IN MAKING ITS DECISIONS TO SIGN THIS AGREEMENT."  Agreement ¶ 30.  Such an acknowledgement, Plaintiff continues, renders Defendant's negligent misrepresentation counterclaim deficient as a matter of law.  Pl.'s Br. in Support of S.J. 25 (citing *Davis v. McDonald's Corp.*, 44 F. Supp. 2d 1251, 1260-61 (N.D. Fla. 1998)).

Establishing a claim for negligent misrepresentation requires showing that a defendant negligently made an incorrect statement, and that the plaintiff justifiably relied on that statement. *Kaufman v. i-Stat Corp.*, 754 A.2d 1188, 1195 (N.J. 2000).  If the claim is that a party made a misrepresentation by omission, then it is necessary to demonstrate that the party had a duty of

disclosure to the claimant.  *South Broward Hosp. Dist. v. MedQuist Inc.*, 516 F. Supp. 2d 370, 397 (D.N.J. 2007)

The Court notes that Defendants' Opposition Brief fails to respond at all to any of Plaintiff's arguments. [6]  It also does not direct the Court's attention to any specific statements allegedly made by Plaintiff, nor does it describe how it justifiably relied on those statements. The Court's independent review of the record, however, suggests that Defendants offered some evidence of alleged material omissions.  For instance, Amish Naik, an employee at Northstar, testified in his deposition that Plaintiff did not inform Defendants that they would have to change their property management system in order to comply with the Agreement.  Naik Deposition 81-82.  In addition, both Defendant Patel and Mr. Naik allude to concerns about Plaintiff's omissions concerning the creation of the employee training room relating to the Franchisor Guaranty Provision.  *Id.* ¶ 82-85; A. Patel Deposition 111-12.  However, Defendants have failed to show that Plaintiff owed them any duty of disclosure that might give rise to liability for negligent misrepresentation by omission.  The Court finds no basis for such a duty.  *See South Broward Hosp.*, 516 F. Supp. 2d at 397 (noting that the three types of transactions giving rise to a duty to disclose are 1) where a fiduciary relationship exists, 2) where the transaction itself calls for "perfect good faith and full disclosure," and 3) where one party "expressly resposes a trust and confidence in the other" and concluding that "[t]he arm's length negotiation of a contract between two corporations for transcription services does not fall within the narrow circumstances giving rise to . . . a duty to disclose under New Jersey law").  Thus, under these circumstances,

---

[6] Defendants' Opposition Brief explained that Defendants had withdrawn their "claims for fraud and tortious interference." Defs.' Opp. Br. 1 n.1.  While the Court understood Defendant's "fraud" claims to embrace only their *Intentional* Misrepresentation Counterclaim asserted in Count II, Plaintiff understood Defendants to mean that they were also withdrawing their *Negligent* Misrepresentation Counterclaim (Count III).  *See* Pl.'s Reply Br. 1 n.1. Given Defendants' failure to offer any argument in support of their negligent misrepresentation claim, Plaintiff's interpretation is not unreasonable.  But a negligence claim by its very nature is not a claim sounding in fraud.  Thus, the Court will not consider Defendants to have abandoned their negligent misrepresentation Counterclaim.

negligent omissions cannot be the basis for a negligent misrepresentation claim.  Accordingly, the Court will grant Plaintiff's motion for summary judgment on Count II of Defendants' Counterclaim.

## IV.    CONCLUSION

For the reasons stated above, the Court will grant in part and deny in part Plaintiff's motion for summary judgment.  It will enter summary judgment against Defendants as to liability under sections 34 and 43 of the Lanham Act and for breach of the parties' franchise Agreement, but will decline to enter an award of damages on either count.  It will also enter summary judgment on Plaintiff's declaratory judgment claim that Defendants Anil and Manish Patel are personally liable for Northstar's obligations under the Agreement.  The Court will further grant Plaintiff summary judgment on Defendants' unconscionability and negligent misrepresentation Counterclaims.  It will deny the motion in all other respects.  The Court will issue an appropriate order.


Dated:___3/28/13_____                                    ___/s/ Robert B. Kugler____
                                                          ROBERT B. KUGLER
                                                          United States District Judge